# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

**MICHAEL ANDRÉ GOLDEN,**      )
                                )
                Petitioner,     )
                                )
v.                              )      **No. CIV 14-073-RAW-KEW**
                                )
**JOE M. ALLBAUGH, DOC Director,**  )
                                )
                Respondent.     )

## OPINION AND ORDER

This matter is before the Court on Petitioner's petition for a writ of habeas corpus,

pursuant to 28 U.S.C. § 2254. Petitioner, a pro se prisoner currently incarcerated at Cimarron

Correctional Facility in Holdenville, Oklahoma, is challenging his conviction and sentence

in Atoka County District Court Case No. CF-2010-233 for Possession of Contraband by an

Inmate in a Penal Institution, After Former Conviction of Two or More Felonies. He raises

the following grounds for relief:

    I.      The jury panel was tainted.

    II.     The State failed to show a proper chain of custody.

    III.    The evidence was insufficient to support the verdict.

    IV.    The presentation of other-crimes evidence deprived Petitioner of a fair
            trial and due process of law.

    V.     The trial court erred by prohibiting exculpatory evidence from being
            presented to the jury. At a minimum, the trial court prevented the
            defense from presenting evidence.

    VI.    Prosecutorial Misconduct denied Petitioner a fair trial and due process
            of law.

VII.   The trial court erred by using felonies which arose from the same transaction.

VIII.  The trial court erred by prohibiting the judgments and sentences as to former felonies from being appropriately redacted.

IX.    Petitioner received ineffective assistance of counsel.

X.     The trial judge erred by ordering the sentence to be served consecutively to other sentences.

XI.    The court erred in failing to follow statutory procedures when the jury had questions.

XII.   Petitioner's right to be free from double jeopardy was violated.

XIII.  Cumulative error deprived Petitioner of a fair trial.

Respondent concedes that Petitioner has exhausted his state court remedies for the purpose of federal habeas corpus review. The following records have been submitted to the court for consideration in this matter:

A.     Petitioner's direct appeal brief.

B.     The State's brief in Petitioner's direct appeal.

C.     Summary Opinion affirming Petitioner's judgment and sentence.

D.     Transcripts

E.     State court record.

## Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act, federal habeas corpus relief is proper only when the state court adjudication of a claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by

the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

## Facts

In the early morning hours of October 23, 2010, a prison guard caught Petitioner smoking a marijuana cigarette in the bathroom of his cell block at the Howard McLeod Correctional Center in Atoka, Oklahoma. (Tr. I, 140-44, 181). Officer Justin Brown smelled the strong odor of burning marijuana and entered the bathroom to find Petitioner and another inmate standing near the showers. (Tr. I, 142-44, 167, 170). Petitioner was holding a hand-rolled cigarette, and when he saw Officer Brown, he turned his back and ran toward the toilet area. (Tr. I, 144-47, 149-50, 157). Before Officer Brown could catch him, Petitioner ate the cigarette. (Tr. I, 145-47, 171, 261, 263). Officer Brown and other officers quickly apprehended Petitioner and the other inmate. (Tr. I, 144-48, 175-76, 190-93, 256-58). Once the two inmates were removed from the bathroom into a secure area, the bathroom was searched for contraband. (Tr. I, 147-49, 178). The only contraband that was found was a used cigarette butt by one of the toilets. (Tr. I, 192-93, 200).

As Petitioner was transported to the segregated housing unit ("SHU") at the correctional center, Officer Jesse McDaniel conducted a "shake down" of Petitioner's single-occupancy cell. (Tr. I, 178, 193, 201, 276). All of Petitioner's personal possessions, including a large, blue folder with Petitioner's name and prisoner number, were collected by Officer McDaniel and wrapped in a blanket. (Tr. I, 178-80, 182, 194-95; State's Ex. 1-B;

Dkt. 11-3 at 103). The blanket containing Petitioner's belongings were immediately given to Officer Carol Doose, who personally transported the bundle to the SHU where it was checked into the property room by Sergeant Jerome Mick. (Tr. I, 179, 183, 193-94, 204-05, 225-26). While Sergeant Mick was taking inventory of Petitioner's property, he discovered a secret "hidey hole" cut into an envelope within the folder. (Tr. I, 219-22; State's Ex. 1-B through 1-E; Dkt. 11-3 at 103-06). Inside the hole was a tobacco pouch containing a baggie with a green leafy substance and a blue pill. (Tr. I, 222-27; State's Ex. 1-F, 1-G; Dkt. 11-3 at 107-08).

Sergeant Mick tagged the items into evidence and submitted them to Lieutenant Todd Dillard. (Tr. I, 227-28, 230-32, 234, 236, 246-47; Trial Exhibits 1-F, 1-G). Lieutenant Dillard then placed them into a secure contraband locker for investigation. (Tr. I, 267-68, 273-74; Trial Exhibits 1-F, 1-G). Investigating Officer Theresa Guest-Settlemeyer later retrieved the items from the locker and conducted a field test of the green leafy substance. (Tr. I, 286-89). The substance tested positive for marijuana. (Tr. I, 287-89; Trial Exhibit 1-J).

On November 17, 2010, Officer Guest-Settlemeyer transported the green leafy substance and the blue pill to the Oklahoma State Bureau of Investigation ("OSBI") Office in McAlester, Oklahoma for further testing. (Tr. I, 286-89; Trial Exhibit 1-I). On November 19, 2010, OSBI Criminalist John Giles tested the submitted items. (Tr. II, 301-302, 307-310). Criminalist Giles analyzed the green leafy substance and conclusively identified it as marijuana. (Tr. II, 301-307; Trial Exhibit 1-A). The blue pill, which had been broken by the time it was tested, was identified by Criminalist Giles as a Schedule I substance commonly known as "Ecstasy." (Tr. II, 301-07, 310, 313; Trial Exhibit 1-A).

After Petitioner was caught in the bathroom, he waived his right to remain silent and spoke with Lieutenant Dillard.  (Tr. I, 258-59; Trial Exhibit 1-H; Dkt. 11-3 at 109).  He told Lieutenant Dillard that he could not pass a drug test for marijuana and that he had eaten the hand-rolled cigarette he was seen holding in the bathroom.  (Tr. I, 259-264; State's Ex. 1-H; Dkt. 11-3 at 109).  When Lieutenant Dillard informed Petitioner that the administrative sanctions for testing positive for marijuana or refusing a drug test were the same, Petitioner refused to take a drug test.  (Tr. I, 264-266).

**Ground I:  Tainted Jury**

Petitioner alleges he was denied his right to due process and a fair trial because of a "tainted" jury.  He claims three members of the jury had, at a minimum, situations involving the appearance of impropriety, and one member served in violation of a statute.  Petitioner claims that two of the contested jurors, K.L.B. and L.T., were father and daughter.[1]  The third contested juror was B.H., whose father was the warden of Howard McLeod Correctional Center, where the alleged incident occurred.

Petitioner claims that B.H.'s jury service violated Okla. Stat. tit. 22, § 660, which states in pertinent part:

> A challenge for implied bias may be taken for all or any of the following cases, and for no other:
>
> 1.  Consanguinity or affinity within the fourth degree, inclusive, to the person injured by the offense charged or on whose complaint the prosecution was initiated[.]

*Id.*

---

[1] According to the OCCA's opinion in Petitioner's direct appeal, K.L.B. and L.T. were mother and daughter.  (Dkt. 10-3 at 3).

Petitioner alleges the warden of the facility would be both the person injured by the offense and the person upon whose complaint the prosecution was instituted. Therefore, the warden's daughter should not have served on the jury. Petitioner further alleges that because K.L.B. was the father of L.T., the father could have had undue influence over his daughter.

This claim was raised in Petitioner's direct appeal, and the Oklahoma Court of Criminal Appeals ("OCCA") denied it on the merits.

> We reject Golden's claim that his jury panel was tainted. Allowing B.H., the daughter of the warden of the prison where the crime occurred, to serve on the jury did not violate Okla. Stat. tit. 22, § 660. First, the plain language of the statute does not require the automatic exclusion of a panelist because of a familial relationship to the injured or complaining party. Second, and more importantly, the warden constituted neither the injured nor complaining party under the circumstances of this case. The record shows the examination of B.H. was sufficient to examine and resolve any question of implied bias she may have held and the district court did not abuse its discretion in allowing her to serve. *See Sanchez v. State*, 223 P.3d 980, 997 (2009). Appellant also challenges the district court's decision allowing a second juror, L.T., to serve. The questions put to L.T. on *voir dire* and her responses resolved any fair concern that her decision would be unduly influenced by her mother who also sat on this jury. *Id.* This claim is denied.

*Golden v. State*, No. F-2011-506, slip op. at 2-3 (Okla. Crim. App. Apr. 23, 2013).

The Supreme Court has held that "the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, indifferent jurors," and the "failure to accord an accused a fair hearing violates even the minimal standards of due process." *Irvin v. Dowd*, 366 U.S. 717, 722 (1961) (citations and internal quotation marks omitted). Because of the "broad deference traditionally accorded to trial courts in determining jury selection procedures and conducting voir dire," however, "[a] federal habeas court may reverse a state court's findings of juror impartiality only upon a showing of manifest error." *Lucero v.*

*Kirby*, 133 F.3d 1299, 1308 (10th Cir. 1998) (citation omitted). To make such a showing, a petitioner "must demonstrate either that the trial resulted in actual prejudice or that it gave rise to a presumption of prejudice because it involved such a probability that prejudice will result that it is deemed inherently lacking in due process." *Id.* (citations and internal quotation marks omitted).

The record shows that during voir dire, B.H. told the court that she was the warden's daughter. (Tr. I, 95). The court then inquired whether she could be fair and impartial, and she answered that she could. (Tr. I, 95-96). In response to the court's additional questioning, B.H. stated she had not discussed this case, or any case, with her father. (Tr. I, 96). She also did not know and was not familiar with any witnesses from the correctional facility. (Tr. I, 97-98). She further stated that she presumed Petitioner was not guilty, and there was no reason she could not be fair. (Tr. I, 98). In response to questions from defense counsel, B.H. stated she rarely spoke with her father, she never had visited the correctional facility, and she had no problem rendering a not guilty verdict. (Tr. I, 106-09). Defense counsel passed B.H. for cause and chose not to excuse her from the jury panel, even though he had a peremptory challenge available for her removal. (Tr. I, 109-10).

With respect to the mother and daughter jurors, the record shows that both were specifically asked about their relationship and whether they could make up their own minds about the case. (Tr. I, 79-80). Both responded in the affirmative, and the daughter specifically stated that she understood that her mother was not her "boss," and her mother would not unduly influence her decision. (Tr. I, 80). Defense counsel declined to question these two potential jurors or to use a peremptory challenge to remove one or both of them from the panel.

After careful review, this Court finds the OCCA's decision on this issue was not contrary to, or an unreasonable application, of Supreme Court law. *See* 28 U.S.C. § 2254(d). Because Petitioner has not demonstrated manifest error in this case, habeas relief cannot be granted.

**Ground II: Chain of Custody**

Petitioner next alleges the State failed to show a proper chain of custody for the contraband. Respondent asserts this claim is an issue of state law that is not cognizable in this habeas action. "Federal habeas review is not available to correct state law evidentiary errors. . . . [Petitioner] is entitled to relief only if an alleged state-law error was so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process." *Hooks v. Workman*, 689 F.3d 1148, 1180 (10th Cir. 2012) (citations and internal quotation marks omitted). In considering the issue, this Court defers to the state court's interpretation of state law. *See, e.g., Gonzales v. Tafoya*, 515 F.3d 1097, 1126-27 (10th Cir.) ("In conducting our inquiry, we defer to the state court's interpretations of state law."), *cert. denied*, 555 U.S. 890 (2008).

Petitioner is arguing that the chain of custody for the contraband was insufficient, because the evidence changed hands several times, and there were "gaps" in the chain. Respondent alleges Petitioner's claim relies on mere speculation and fails to show grossly prejudicial error that rendered his trial fundamentally unfair. The OCCA found no merit in the claim on direct appeal:

> The district court did not err in rejecting Golden's attack on the chain of custody and admitting the contraband evidence. *See Postelle v. State*, 267 P.3d 114, 132 (Okla. Crim. App. 2011), *cert. denied*, ___ U.S. ___, 133 S.Ct. 282 (2012) (court's ruling admitting evidence is reviewed for an abuse of

discretion); *Mitchell v. State*, 235 P.3d 640, 657-58 (Okla. Crim. App. 2010) (where there is only speculation that tampering or alteration occurred, it is proper to admit the evidence and allow any doubt to go to the weight of the evidence rather than its admissibility).

*Golden*, No. F-2011-506, slip op. at 3.

> The purpose of the chain of custody rule is to guard against substitution of or tampering with the evidence between the time it is found and the time it is analyzed. Although the State has the burden of showing the evidence is in substantially the same condition at the time of offering as when the crime was committed, it is not necessary that all possibility of alteration be negated. If there is only speculation that tampering or alteration occurred, it is proper to admit the evidence and allow any doubt to go to its weight rather than its admissibility.

*Alverson v. State*, 983 P.2d 498, 509 (Okla. Crim. App. 1999) (citations and internal quotations marks omitted), *cert. denied*, 528 U.S. 1089 (2000).

The record shows that immediately after the incident, Officer Jesse McDaniel gathered all of Petitioner's belongings from his cell, secured the items in a blanket, and put it on a cart. (Tr. I, 178-183). Officer McDaniel then turned the evidence over to another officer who transported the items to SHU. (Tr. I, 179- 83). Officer McDaniel could not remember the name of the officer posted outside the cell who took custody of Petitioner's belongings. (Tr. I, 179).

Officer Carol Doose testified that she was the officer outside the cell and that she took custody of the evidence. (Tr. I, 193-95, 201). Officer Doose transported the cart with Petitioner's wrapped belongings to the SHU, where she turned them over to Sergeant Jerome Mick. (Tr. I, 193-95, 204-05). Petitioner's belongings never were left unattended between the time they were gathered at the cell and transported into a secure area by Officer Doose. (Tr. I, 210-11). Sergeant Mick checked Petitioner's belongings into the property room. (Tr.

I, 219-20, 225-26). His inventory of the items revealed drugs inside a folder. (Tr. I, 220-24; Trial Exhibits 1-C through 1-G). Petitioner's name and prisoner number were written on the outside of the folder. (Tr. I, 224; State's Ex. 1-B; Dkt. 11-3 at 103). The green leafy substance and blue pill were found hidden in a tobacco pouch inside a hole in the envelope within the folder. (Tr. I, 220-27). Sergeant Mick testified that when he found the drugs, he placed evidence tags on both items and turned the contraband over to Lieutenant Todd Dillard. (Tr. I, 227-28, 230-32, 244-47; Tr. II, 318-21).

Lieutenant Dillard testified that he took the items from Sergeant Mick, logged them into evidence, and placed them into a secure contraband locker for investigation. (Tr. I, 268-69, 273-75). Investigating Officer Theresa Guest-Settlemeyer later retrieved the items from the locker and conducted a field test of the green leafy substance. (Tr. I, 286-90; State's Ex. 1-J; Dkt. 11-3 at 111). Officer Guest-Settlemeyer retained custody of the items until she packaged and submitted them to the OSBI for further testing. (Tr. I, 286-90, 292). The OSBI received the sealed package with no signs of tampering and analyzed both the green leafy substance and the blue pill. (Tr. II, 301-10; State's Ex. 1-A; Dkt. 11-3 at 102). From the time the drugs were discovered hidden in Petitioner's belongings until they were analyzed, they remained in substantially the same condition. (Tr. I, 195, 269, 289; Tr. II, 307, 319).

This Court finds the trial testimony demonstrated that the contraband seized from Petitioner's belongings were in the same condition when they were analyzed as when they were discovered. There was no evidence of tampering with the evidence or any indication that the chemical analysis conducted on the evidence was compromised. Therefore, the trial court's admission of the evidence was not error under state law. *See Jones v. State*, 507 P.2d

1267, 1270 (Okla. Crim. App. 1973) ("To create a complete chain of evidence it is not necessary that each link have personal knowledge of each and every other link.").

While there may have been some inconsistencies in the testimony, any speculation regarding the condition of the evidence fell within the province of the jury to determine and resolve. *See Johnson v. State*, 625 P.2d 1270, 1272 (Okla. Crim. App. 1981) (holding that evidence was properly admitted and any speculation of tampering went to the weight of the evidence rather than its admissibility). Because Petitioner has failed to show the chain of custody denied him a fair trial, this ground for habeas relief fails.

**Ground III: Sufficiency of the Evidence**

Petitioner alleges the evidence was insufficient to support the verdict. He argues that no marijuana was found in the bathroom or on his person, and the only evidence was found in his property. He further claims that without a proper chain of custody, this evidence should not have been admitted against him. The OCCA found no merit in this claim:

> After reviewing the evidence in the light most favorable to the State, as we must, we find that any rational trier of fact could have found the elements of Possession of Contraband by an Inmate in a Penal Institution, After Former Conviction of Two or More Felonies in this case beyond a reasonable doubt. *See Logsdon v. State*, 231 P.3d 1156, 1161 (Okla. Crim. App. 2010; *Spueler v. State*, 709 P.2d 202, 203-04 (Okla. Crim. App. 1985).

*Golden*, No. F-2011-506, slip op. at 3-4.

"Sufficiency of the evidence can be considered to be a mixed question of law and fact." *Case v. Mondagon*, 887 F. 2d 1388, 1392 (10th Cir. 1989), *cert. denied*, 494 U.S. 1035 (1990). In federal habeas review of a state court conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable

doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

The Supreme Court repeatedly has emphasized the deference the reviewing court owes to the trier of fact and "the sharply limited nature of constitutional sufficiency review." *Wright v. West*, 505 U.S. 277, 296 (1992) (citing *Jackson*, 443 U.S. at 319). "[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume--even if it does not affirmatively appear in the record--that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326. The court must "accept the jury's resolution of the evidence as long as it is within the bounds of reason." *Grubbs v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir. 1993) (citing *United States v. Edmondson*, 962 F.2d 1535, 1548 (10th Cir. 1992)). "To be sufficient, the evidence supporting the conviction must be substantial; that is, it must do more than raise a mere suspicion of guilt." *Beachum v. Tansy*, 903 F.2d 1321, 1332 (10th Cir.), *cert. denied*, 498 U.S. 904 (1990) (citing *United States v. Troutman*, 814 F.2d 1428, 1455 (10th Cir. 1987)).

To determine whether there was sufficient evidence presented at trial to sustain petitioner's conviction, the court first must look to Oklahoma law for the elements required for the crime. *Jackson*, 443 U.S. at 324 n.16; *see also Torres v. Mullin*, 317 F.3d 1145, 1152 (10th Cir.), *cert. denied*, 540 U.S. 1035 (2003). The elements of Possession of Contraband in Prison, Okla. Stat. tit. 57, § 21(B), are:

<u>First</u>, an inmate;
<u>Second</u>, without authority;
<u>Third</u>, having possession of;
<u>Fourth</u>, a controlled dangerous substance, Marihuana;
<u>Fifth</u>, in a State penal institution or place where prisoners are located.

(OUJI-CR 6-55; Dkt. 11-4 at 100).

The record shows that Petitioner, an admitted inmate, was caught in a cell block bathroom surrounded by the strong smell of burning marijuana and smoking a hand-rolled cigarette. (Tr. I, 143-44). He admitted he ate the cigarette before it could be confiscated and that he could not pass a drug test for marijuana. (Tr. I, 263-66). This evidence sufficiently established his possession of marijuana in a penal institution. *See United States v. Berry*, 717 F.3d 823 (10th Cir. 2013) (holding that jury may draw reasonable inferences from evidence to establish possession).

The State also presented evidence that Petitioner had a packet of marijuana in his personal belongings in his cell. As discussed above, the chain of custody with respect to this evidence was adequately established through the trial testimony of correctional officers. Although Petitioner was not in actual physical control of the marijuana found in his personal belongings, his knowing possession of the contraband was proven through circumstantial evidence, including Petitioner's name and prison number on the folder containing the contraband. (Trial Exhibits 1-B, 1-E). Petitioner was housed in a single cell on the block, and when Officer McDaniel collected Petitioner's personal belongings, the other inmates were in their own cells for a head count. (Tr. I, 185, 203). Also, only a few minutes passed from the time Petitioner was caught smoking in the bathroom and the time his cell was shaken down. (Tr. I, 211). The Court finds it was reasonable for the jury to infer that Petitioner possessed the marijuana found in his personal belongings.

After careful review, the Court finds the OCCA's determination of this issue was not contrary to, or an unreasonable application of Supreme Court law. 28 U.S.C. § 2254(d)(1). The Court further finds the OCCA's decision on the claim was not based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(2).  This ground for relief fails.

**Ground IV:  Other Crimes Evidence**

Petitioner alleges that at a motion hearing before trial, the trial court struck a charge associated with the blue pill, but ruled with the prosecutor and defense counsel apparently in agreement, that the blue pill could be discussed at trial as part of the *res gestae*. Throughout the trial, the blue pill, which tested positive as Ecstacy was discussed.  Petitioner claims that any evidence related to the blue pill was more prejudicial than probative. Respondent alleges this ground for relief should be denied, because it presents no basis for federal habeas corpus relief.  The OCCA denied relief on direct appeal as follows:

> We reject Golden's claim that the district court admitted improper other crimes evidence.  Evidence of the blue Ecstacy pill, found in the same container as the marijuana in Golden's cell, was properly admitted because it was inextricably intertwined with the evidence of the charged offense.  *See Eizember v. State*, 154 P.3d 208, 230 (Okla. Crim. App. 2007); *Dixon v. State*, 560 P.2d 204, 206 (Okla. Crim. App. 1977).  There was no error in its admission.

*Golden*, No. F-2011-506, slip op. at 4.

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (citing 28 U.S.C. § 2241; *Rose v. Hodges*, 423 U.S. 19, 21 (1995) (per curium)).  "Habeas corpus is a civil proceeding and the burden is upon the petitioner to show by a preponderance of the evidence that he is entitled to relief."  *Beeler v. Crouse*, 332 F.2d 783, 783 (10th Cir. 1964) (citing *Teague v. Looney*, 268 F.2d 506 (10th Cir. 1959)).

Here, the court finds Petitioner's evidentiary complaint involves the application of state law. *See, e.g., Velarde v. Reid*, No. 06-1545, 2008 WL 1128871, at *2 (10th Cir. Apr. 17, 2007) (unpublished) (noting the Court was unaware "of any Supreme Court case defining the constitutional parameters of the admissibility of res gestae evidence"). Because "federal habeas review is not available to correct state law evidentiary errors," Petitioner's claim is not cognizable unless he demonstrates error "so grossly prejudicial" that it denied him a fundamentally fair trial. *Hooks v. Workman*, 689 F.3d 1148, 1180 (10th Cir. 2012).

The record shows that before trial, the court concluded that Petitioner could not be subjected to two criminal charges based on the possession of two different types of drugs found in the same container. (Mot. Tr. 12-16; Dkt. 11-1). The court, however, agreed with the prosecutor and defense counsel that the blue pill was part of the *res gestae* of the crime of possession of contraband in a prison, and it could be referenced at trial. (Mot. Tr. 13-16; Dkt. 11-1).

The trial court's decision was supported by the evidence which showed the green leafy substance and the blue pill were hidden in the same package. (Tr. I, 220-24). Both substances were seized together, and all the reports arising from Petitioner's possession of the contraband referenced both the green leafy substance and the blue pill. In addition, both items were subjected to chemical analysis. Therefore, the evidence surrounding the blue pill was part of the entire possession transaction, and it gave the jury a complete understanding of the crime and the processing of evidence. *See Warner v. State*, 144 P.3d 838, 868 (Okla. Crim. App. 2006). Although the jury learned that the blue pill was Ecstacy, that information was incidental and was revealed as part of the entire possession transaction. *See Jones v. State*, 128 P.3d 521, 540 (Okla. Crim. App. 2006) (explaining that the *res gestae* exception

involves evidence of other offenses or bad acts that incidentally emerge). Therefore, the admission of evidence of the blue pill was proper under state law and did not render Petitioner's trial unfair. *See Van White v. State*, 990 P.2d 253, 273 (Okla. Crim. App. 1999) (finding admissible those occurrences which complete the picture of the offense charged). This ground for relief is meritless.

**Ground V: Exclusion of Evidence**

Petitioner next alleges the trial court erred by prohibiting the presentation of exculpatory evidence when his cross-examination of Officer Doose was limited. The trial court also declined to allow the admission of prison forms. This claim was denied by the OCCA on direct appeal:

> The district court did not err in limiting the defense's cross-examination of former correctional officer Doose. *See Thrasher v. State*, 134 P.3d 846, 849 (Okla. Crim. App. 2006). Nor was Golden denied the opportunity to present material evidence in support of his defense by the district court's rulings excluding documentary evidence of the prison's forms and policies on evidence collection. *See Postelle*, 267 P.3d at 132.

*Golden*, No. F-2011-506, slip op. at 4.

The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant the opportunity to confront witnesses through cross-examination. *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986). This constitutional guarantee, however, does not extend to "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Id.*, at 679 (citation omitted). Therefore, trial judges have wide latitude in imposing reasonable limits on cross-examination in order to prevent the harassment of witnesses and may exclude interrogation on a subject which confuses the issues, is repetitive or has marginal relevance. *Id.*

The record shows that during the testimony of Officer Doose, defense counsel asked her if she had been "asked to leave" the Department of Corrections. (Tr. I, 207). Officer Doose responded that she had not been asked to leave and had left on her own accord. (Tr. I. 207). Defense counsel then attempted to ask Doose if she had any prior reprimands and "why she was asked to leave." (Tr. I, 207). Defense counsel's question was based on Petitioner's statement to him that Doose "was asked to leave because she was having sex with other inmates involving drugs." (Tr. I, 208). On appeal, Petitioner claimed the court's decision to deny this line of questioning denied him the opportunity to present exculpatory evidence.

> When considering a defendant's challenge to limitations on cross-examination, we "determine whether the jury had sufficient information to make a discriminating appraisal of the witness' motives and bias." *United States v. Bindley*, 157 F.3d 1235, 1240 (10th Cir. 1998) (citing *United States v. Gault*, 141 F.3d 1399, 1403 (10th Cir. 1998)). "A defendant's Confrontation Clause rights are violated when he is prohibited from engaging in otherwise appropriate cross-examination designed to elicit the witness' bias and a reasonable jury might have received a significantly different impression of the witness' credibility." *United States v. Toles*, 297 F.3d 959, 967 (10th Cir. 2002) (citing *Van Arsdall*, 475 U.S. at 680).

*United States v. Geames*, 427 F.3d 1333, 1336 (10th Cir. 2005).

In Petitioner's case, he had no evidence that Officer Doose had been terminated or suspended from her position. To the contrary, defense counsel admitted he wanted to impeach Officer Doose's credibility by trying to get her to say whether she had been asked to leave the prison. (Tr. I, 208). Officer Doose, however, already had testified that she had not been asked to leave. (Tr. I, 207). Any further inquiry on this question would have been repetitious and of little relevance. Therefore, the trial court's decision to stop further inquiry was proper under the circumstances and did not deny Petitioner the opportunity to present

material evidence.

Petitioner also complained on direct appeal that the trial court's disallowance of inquiry on the prison's evidence collection policy denied him the opportunity to present material evidence. He specifically argued that the trial court should have entered into evidence a blank "Chain of Custody" form to show that one was not used in this matter. (Tr. I, 273; Court's Ex. 1).

The record shows that defense counsel was afforded ample opportunity to ask the officer witnesses about their normal procedure for collecting evidence from prisoners and how evidence was collected in Petitioner's case. Defense counsel elicited testimony that no property log was completed by Officer McDaniel or Officer Doose when they gathered Petitioner's belongings from his cell. (Tr. I, 183, 205). Counsel also elicited testimony that Petitioner was not permitted to observe the search of his cell. (Tr. I, 163). The jury also heard evidence that Sergeant Mick did not completely fill out the contraband evidence log, but instead turned the evidence over to Lieutenant Dillard who completed the form. (Tr. I, 227-36, 246-47, 268, 273-74, 290; Tr. II, 318-19). The jury heard and saw evidence that some internal prison forms were filled out when the contraband was collected, and some were not. Under these circumstances, this Court finds the introduction of a blank form or statement of policy was not relevant to the jury's determination of the sufficiency of the chain of custody.

This Court, therefore, finds the trial court's exclusion of this evidence did not limit Petitioner's ability to present a defense. The Court further finds the OCCA's determination of this issue was not contrary to, or an unreasonable application of Supreme Court law. This ground for habeas relief is meritless.

**Ground VI:  Prosecutorial Misconduct**

Petitioner alleges in Ground VI that he was denied a fair trial because of the prosecutor's misconduct in the State's closing arguments.  He complains that after discussing the fact that Petitioner was not present when his cell was searched, the prosecutor argued facts not in evidence:

> Ladies and Gentlemen, that points out one thing.  That if they let the Defendant go back to his cell after they caught him in the bathroom I doubt that [marijuana] would have ever been found but he didn't have an opportunity after he was caught with the cigarette that he devoured in the bathroom, he didn't have a chance to go back and get rid of this (indicating).

(Tr. II, 342-43; Dkt. 11-3 at 47-48).

Petitioner also claims the prosecutor bolstered the credibility of the State's witnesses when he stated in closing:

> And Ladies and Gentlemen, I submit to you that if [sic] every person that took the stand in this case came across as being credible because they had no motive to be less than honest with you.  It makes no difference to them whether they don't have to come to court on any of these cases and have to testify about people having drugs in penal institutions.  I'm sure they weren't thrilled any more than you were having to be here all day.  They don't have any motive to be less than honest with you and what they testified to was consistent with each other witness.  It is all a chain of events.

(Tr. II, 344; Dkt. 11-3 at 49).

Petitioner's trial counsel made no objection to the comments at issue.  On direct appeal the OCCA denied this claim on the merits, finding "[p]rosecutorial misconduct did not deprive Golden of a fair trial."  *Golden*, No. F-2011-506, slip op. at 4 (citing *Pryor v. State*, 254 P.3d 721, 726 (Okla. Crim. App. 2011) (Allegations of prosecutorial misconduct warrant reversal only if the cumulative effect of the errors deprived the defendant of a fair trial.))

In a habeas corpus action, claims of prosecutorial misconduct are reviewed only for a violation of due process. *See Darden v. Wainwright*, 477 U.S. 168, 181 (1986). "[N]ot every trial error or infirmity which might call for application of supervisory powers correspondingly constitutes a failure to observe that fundamental fairness essential to the very concept of justice." *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974) (citations and quotations omitted). In order to be entitled to relief, [petitioner] must establish that the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* at 643. This determination may be made only after considering all of the surrounding circumstances, including the strength of the State's case. *See Darden*, 477 U.S. at 181-82.

*Malicoat v. Mullin*, 426 F.3d 1241, 1255 (10th Cir. 2005), *cert. denied*, 547 U.S. 1181 (2006).

In the first instance of alleged prosecutorial misconduct, the prosecutor's comment about Petitioner's not being allowed back in his cell was made in response to defense counsel's implication through the questioning of witnesses that someone may have planted the marijuana in Plaintiff's cell. The Tenth Circuit has observed that a prosecutor is allowed a "reasonable amount of latitude" in reciting evidence and drawing inferences from evidence. *Duvall v. Reynolds*, 139 F.3d 768, 795 (10th Cir. 1998). Here, the Court finds the prosecutor's comments were based on the evidence and the inferences to be drawn from the evidence. This fell within the broad range of argument afforded a prosecutor at trial, and there was no constitutional error.

As for the second remark, petitioner claims the prosecutor improperly vouched for the credibility of his witnesses by stating they had no motive to be untruthful.

It is error for the prosecution to personally vouch for the credibility of its witnesses. Argument or evidence is impermissible vouching only if the jury could reasonably believe that the prosecutor is indicating a personal belief in the witness' credibility, either through explicit personal assurances of the

witness' veracity or by implicitly indicating that information not presented to the jury supports the witness' testimony.

*United States v. Bowie*, 892 F.2d 1494, 1498 (10th Cir. 1990) (citations omitted).

Here, the Court finds the prosecutor's remarks did not constitute prosecutorial misconduct. After considering the surrounding circumstances and the strength of the State's case, the Court further finds Petitioner has not shown that the comments resulted in a denial of due process or an unfair trial. Therefore, the decision by the OCCA was not contrary to, or an unreasonable application of, Supreme Court law. Habeas relief cannot be granted for this claim.

**Ground VII: Sentence Enhancement**

Petitioner alleges the trial court erred in admitting evidence of his prior felony convictions arising from the same transactions to enhance his sentence. Respondent asserts this claim is based on an alleged evidentiary error, and it presents no basis for federal habeas corpus relief.

On direct appeal Petitioner admitted he had at least three prior felony convictions for purposes of sentence enhancement. He claimed, however, that the jury's sentencing decision may have been prejudicially affected by the admission of some of his prior felony convictions which arose from the same transaction or occurrence. The OCCA rejected this claim as follows:

> We reject Golden's claim that he was prejudiced by the prosecution's use of former felonies that arose out of the same transaction to enhance his sentence. Golden's concession on appeal that he had three valid prior convictions that could have been used to enhance his sentence and that he received the minimum sentence for a person with two or more prior felonies makes his claim of prejudice speculative at best.

*Golden*, No. 2011-506, slip op. at 5.

Pursuant to Okla. Stat. tit. 57, § 21(C), the use of two or more prior felony convictions to enhance punishment is limited to the use of those prior felony convictions not arising "out of the same transaction or occurrence or series of events closely related in time and location." Because this statute benefits a defendant who falls within its terms, the burden rests on the defendant to present evidence that the prior convictions arose out of the same transaction or occurrence. *Mornes v. State*, 755 P.2d 91, 95 (Okla. Crim. App. 1988) (citing *Bickerstaff v. State*, 669 P.2d 778, 780 (Okla. Crim. App. 1983)). The determination of whether the defendant has presented enough evidence to meet his burden "should be resolved outside of the presence of the jury prior to the reading of the portion of the information which alleges the multiple convictions." *Miller v. State*, 675 P.2d 453, 455 n.3 (Okla. Crim. App. 1984).

In Petitioner's case, the trial court admitted all documents pertaining to his prior convictions for purposes of sentencing enhancement. (Tr. II, 376-79; Dkt. 11-3 at 81-84). Thereafter, the jury returned a sentence of twenty years imprisonment, which was the minimum sentence for a conviction after two or more felonies. (Tr. II, 388; Dkt. 11-3 at 188; Okla. Stat. tit. 57, § 21(C)).

Petitioner argued on direct appeal that the dates of the offenses and convictions were sufficient to prove that his prior convictions arose out of the same transaction or occurrence. Although he had at least three prior convictions that were unquestionably admissible for purposes of sentence enhancement, he claimed his sentence should be modified because the jury was exposed to his other convictions.

The Court agrees with the OCCA that this claim is speculative and warrants no relief. Petitioner has shown no constitutional error, and he was not prejudiced by receiving the

minimum sentence for his crime. "Federal habeas review is not available to correct state law evidentiary errors; rather it is limited to violations of constitutional rights." *Smallwood v. Gibson*, 191 F.3d 1257, 1275 (10th Cir. 1999) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)). There is no basis for federal habeas corpus relief for this claim.

**Ground VIII: Unredacted Prior Judgments and Sentences**

Petitioner alleges in Ground VIII that the trial court's error in admitting his prior judgments and sentences without redaction of stale information denied him a fair sentencing proceeding. The OCCA denied relief on this claim as follows:

> Golden's claim that he was prejudiced by the trial court's failure to redact references to stale felonies in the documentation sponsored by the State for enhancement of Golden's sentence is without merit. Because Golden received the minimum sentence for a person with his record, error, if any, from references to the stale felonies did not detrimentally affect Golden's sentence. *See Grissom v. State*, 253 P.3d 969, 979 (Okla. Crim. App.), *cert. denied*, 565 U.S. 1084 (2011) (holding error alone does not reverse convictions in Oklahoma, but error plus injury).

*Golden*, No. F-2011-506, slip op. at 5. Respondent alleges the OCCA's decision does not provide a basis for relief for Petitioner.

Petitioner alleged on appeal that the disclosure of his prior felonies that were more than ten years old constituted error under Okla. Stat. tit. 57, § 21(C). The record reflects that the State presented evidence of Petitioner's prior convictions to enhance his sentence through the use of charging Informations, some of which detailed convictions more than ten years old. (Tr. II, 370-79; State's Ex. 2-11; Dkt. 11-3 at 75-84, 112-82). The unredacted documents were admitted over Petitioner's objection. (Tr. II, 376-79; Dkt. 11-3 at 81-84).

To enhance Petitioner's sentence, the State had to establish the fact of Petitioner's prior convictions and Petitioner's identity with respect to the prior convictions. *See Cooper*

*v. State*, 810 P.2d 1303, 1306 (Okla. Crim. App. 1991); Instruction No. 1-21, OUJI-CR 2d (Supp. 2009). In Petitioner's case, the charging Informations were relevant to establish those issues. While portions of the documents referencing stale prior convictions could have been redacted, the trial court's failure to do so did not unfairly affect the jury's sentencing decision, as reflected in the imposition of the minimum sentence available under the facts of the case. This Court, therefore, finds Petitioner's claim of prejudicial error is meritless, and habeas relief is not available for this state-law evidentiary issue.

**Ground IX: Ineffective Assistance of Trial Counsel**

Petitioner next alleges his trial counsel was ineffective in failing to (1) challenge two jurors for cause, (2) object to prosecutorial misconduct, and (3) object to the use of prior related felonies. Petitioner raised a claim of ineffective assistance of trial counsel on direct appeal, and the OCCA denied the claim on the merits:

> Golden fails to show any prejudice from his attorney's failure to challenge the identified panelists for cause, to object to the alleged prosecutorial misconduct or to challenge the number of prior convictions available for enhancement. Therefore, he is not entitled to relief. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Malone v. State*, 293 P.3d 198, 206 (Okla. Crim. App. 2013); *Head v. State*, 146 P.3d 1141, 1148 (Okla. Crim. App. 2006).

*Golden*, No. F-2011-506, slip op. at 5-6.

To prevail on a claim of ineffective assistance of counsel, the accused must prove deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove deficiency, the accused must overcome the strong presumption that counsel's conduct fell outside of the wide range of professional conduct, including trial strategy. *Id*. at 689. To prove prejudice, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*.

24

at 694. On habeas review, the Court does not examine whether the elements of *Strickland* have been met. *Harrington v. Richter*, 562 U.S. 86, 101 (2011). Instead, the pivotal question is whether the state court's application of *Strickland* was reasonable. *Id*.

As discussed above in Ground I, Petitioner was not denied a fair and impartial jury by the presence of the two jurors. In Ground VI, this Court found that Petitioner's trial was not rendered unfair by the prosecutor's comments. In Ground VII the Court found that Petitioner suffered no prejudice from the introduction of evidence regarding his prior felony convictions. Any objection by defense counsel with respect to these issues would have been overruled and would have had no effect on the outcome of the trial.

Defense counsel is not ineffective for failing to raise a meritless objection. *See Sperry v. McKune*, 445 F.3d 1268, 1275 (10th Cir. 2006) (holding that counsel was not ineffective for failing to assert a meritless argument at trial); *Miller v. Mullin*, 354 F.3d 1288, 1298 (10th Cir. 2004) (observing that "if the issue is meritless, its omission will not constitute deficient performance").

Here, the Court finds that because Petitioner's arguments on these three issues have no merit, trial counsel was not ineffective in failing to assert the claims. The Court further finds the OCCA's decision on this issue was not contrary to, or an unreasonable application of Supreme Court law. This habeas corpus claim is meritless.

**Ground X:  Consecutive Sentence**

Petitioner alleges the trial court erred in ordering his 20-year sentence to be served consecutively to other sentences. He argues that in light of the relatively small amount of marijuana involved, his sentence must shock the conscience of this Court. The OCCA found no merit in this claim on direct appeal:

The district court did not abuse its discretion in running the sentence in this case consecutively to Golden's previously imposed sentences and the sentence imposed does not shock our conscience. *See Neloms v. State*, 274 P.3d 161, 170 (Okla. Crim. App. 2012); *Gomez v. State*, 168 P.3d 1139, 1146 (Okla. Crim. App. 2007); *Rea v. State*, 34 P.3d 148, 149 n.3 (Okla. Crim. App. 2001). No relief is warranted.

*Golden*, No. 2011-506, slip op. at 6.

Petitioner's 20-year sentence was the minimum penalty for possession of contraband by an inmate in a penal institution with two or more prior felony convictions, when the possession of contraband is within ten years of completion of the execution of the sentence for any prior offense. *See* Okla. Stat. tit. 57, §§ 21(B) & (C). Petitioner does not assert that his sentence is outside the applicable statutory range.

The Tenth Circuit has addressed the issue of excessive sentence claims as follows: We afford wide discretion to the state trial court's sentencing decision, and challenges to that decision are not generally constitutionally cognizable, unless it is shown the sentence imposed is outside the statutory limits or unauthorized by law. Generally, our review of a sentence ends once we determine the sentence is within the limitation set by statute.

*Dennis v. Poppel*, 222 F.3d 1245, 1258 (10th Cir. 2000) (internal citations omitted), *cert. denied*, 534 U.S. 887 (2001).

The trial court's decision to run Petitioner's sentence consecutive to his other sentences in unrelated cases was not contrary to Oklahoma law, given the overwhelming evidence of Petitioner's guilt in this case. *See Kamees v. State*, 815 P.2d 1204, 1208-09 (Okla. Crim. App. 1991) ("Whether sentences are to be served consecutively or concurrently is a decision resting in the sound discretion of the trial court."). Furthermore, it is well-established that courts may constitutionally impose consecutive sentences for completely distinct and separate offenses. *See O'Neil v. Vermont*, 144 U.S. 323, 331 (1892) ("If [the

defendant] has subjected himself to a severe penalty, it is simply because he committed a great many such offenses"). The Court finds that Petitioner has presented no basis for federal habeas corpus relief with respect to his sentence. Therefore, this habeas claim must be denied.

**Ground XI: Jury Note**

Petitioner alleges the trial court erred in its response to a note from the jury during the second stage of his trial, resulting in his being denied a fair trial and due process. On direct appeal, he complained that the trial court did not place its response to the note in the record and failed to bring the jury into open court, in strict accordance with Okla. Stat. tit. 22, § 894:

> After the jury have retired for deliberation, if there be a disagreement between them as to any part of the testimony or if they desire to be informed on a point of law arising in the cause, they must require the officer to conduct them into court. Upon their being brought into court, the information required must be given in the presence of, or after notice to the district attorney and the defendant or his counsel, or after they have been called.

*Id*. The OCCA denied the claim, as set forth below:

> Golden suffered no prejudice from the district court's failure to strictly adhere to Okla. Stat. tit. 22, § 894 in answering the jury's questions during deliberations. The court consulted counsel and responded by submitting Instruction No. 15. The court's response was a correct statement of the law and the written response accomplished the same result as if the court had brought the jury into the courtroom and responded verbally. *See Mitchell v. State*, 270 P.3d 160, 188 (Okla. Crim. App. 2011).

*Golden*, No. 2011-506, slip op. at 6.

The record shows the jury's note asked (1) whether the sentence imposed would run concurrently or consecutively to Petitioner's remaining time for his prior convictions, and (2) how much time Petitioner had remaining on his prior convictions. (Dkt. 11-3 at 188).

The trial court responded with Instruction No. 15 as follows:

> I have received your questions. After discussion of the issues involved, you are instructed that you have received all of the proper evidence and instructions. Please continue your deliberations.

(O.R. 113; Dkt. 11-4 at 117).

Respondent asserts the trial court's response to the questions did not constitute error under state law, and the response would have been the same if the jury had been brought into open court. The OCCA's denial of this claim cited the similar case of *Mitchell v. State*, 270 P.3d 160 (Okla. Crim. App. 2011), which sets forth the analysis for this claim:

> Under Okla. Stat. tit. 22, § 894, if the jury has a question during deliberations, the trial court is required to call the jury back into the courtroom in the presence of, or after notice to, the district attorney and defense counsel. "When a communication between a judge and jury occurs, after the jury has retired for deliberation, a presumption of prejudice arises." *Givens v. State*, 705 P.2d 1139, 1142 (Okla. Crim. App. 1985). "That presumption may be overcome if, on appeal, this Court is convinced that, on the face of the record, no prejudice to the defendant occurred." *Id. See also Douglas v. State*, 951 P. 2d 651, 679 (Okla. Crim. App. 1997), *rev'd on other grounds*, *Douglas v. Workman*, 560 F.3d 1156 (10th Cir. 2009); *Fisher v. State*, 736 P.2d 1003, 1007 (Okla. Crim. App. 1987).

*Mitchell*, 270 P.3d at 188.

Because Petitioner's claim is grounded in state law error, it is not cognizable in this habeas action, unless he demonstrates error so prejudicial that it deprived him of a fair trial and due process of law. *Nguyen v. State*, 131 F.3d 1340, 1357 (10th Cir. 1997), *cert. denied*, 525 U.S. 852 (1998). The Court finds Petitioner has failed to make this showing. Petitioner has set forth no errors in the trial judges's written responses to the jury's questions, nor has he shown the outcome of his sentencing would have been different if § 894 had been strictly followed. In fact, Petitioner received the minimum sentence available for his crime. Under

28

these circumstances, this Court finds the trial court's response to the jury's questions did not render the sentencing stage of Petitioner's trial fundamentally unfair. *See Maes v. Thomas*, 46 F.3d 979, 984 (10th Cir.), *cert. denied*, 514 U.S. 1115 (1995). The Court further finds the OCCA's determination of this claim was consistent with federal law, and that determination was not based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d). This ground for habeas relief fails.

**Ground XII: Double Jeopardy**

Petitioner alleges he was subjected to double jeopardy, because he received was punished twice for the possession of contraband through a prison disciplinary proceeding, as well as through his criminal prosecution. The OCCA found no merit in this claim:

> Golden's claim that he was punished twice for possessing contraband in a penal institution is without merit. We have rejected this same claim in the past and Golden offers nothing, other than a bare request to reconsider our previous decisions, as support for this claim. *See Dean v. State*, 778 P.2d 476, 479 (Okla. Crim. App. 1989); *Grider v. State*, 737 P.2d 1227 (Okla. Crim. App. 1227). This claim is rejected.

*Golden*, No. 2011-506, slip op. at 6-7. This Court also finds no merit in the claim.

> Because the Double Jeopardy clause only applies to proceedings that are "essentially criminal" in nature, *see Breed v. Jones*, 421 U.S. 519, 528 (1975), "it is well established that prison disciplinary sanctions . . . do not implicate" double jeopardy protections. *Wirsching v. Colorado*, 360 F.3d 1191, 1205 (10th Cir. 2004).

*Fogle v. Pierson*, 435 F.3d 1252, 1262 (10th Cir.), *cert. denied*, 549 U.S. 1059 (2006). *See also Lucero v. Gunter*, 17 F.3d 1347, 1351 (10th Cir. 1994). Habeas corpus relief cannot be granted for this claim.

**Ground XIII: Cumulative Error**

In his final habeas claim, Petitioner alleges cumulative error deprived him of a fair

trial. The OCCA denied relief on appeal:

> There are no errors, considered individually or cumulatively, that merit relief in this case. *Jones v. State*, 201 P.3d 869, 894 (Okla. Crim. App. 2009); *DeRosa v. State*, 89 P.3d 1124, 1157 (Okla. Crim. App. 2004). This claim is denied.

*Golden*, No. 2011-506, slip op. at 7.

"Cumulative-error analysis applies where there are two or more actual errors. It does not apply, however, to the cumulative effect of non-errors." *Hoxsie v. Kerby*, 108 F.3d 1239, 1245 (10th Cir.) (citing *United States v. Rivera*, 900 F.2d 1462, 1471 (10th Cir. 1990), *cert. denied*, 522 U.S. 844 (1997)). *See also Castro v. Ward*, 138 F.3d 810, 832-33 (10th Cir.), *cert. denied*, 525 U.S. 971 (1998); *Le v. Mullin*, 311 F.3d 1002, 1023 (10th Cir. 2002), *cert. denied*, 540 U.S. 833 (2003) ("When reviewing a case for cumulative error, only actual errors are considered in determining whether the defendant's right to a fair trial was violated.").

As discussed above, there were no constitutional errors in the claims Petitioner raised in Grounds I-XII in this habeas petition. Therefore, there is no cumulative error. Habeas relief cannot be granted on this issue.

### Certificate of Appealability

The Court finds Petitioner has failed to make a "substantial showing of the denial of a constitutional right," as required by 28 U.S.C. § 2253(c)(2). In addition, he has not shown "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether [this] court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Therefore, a certificate of appealability cannot be issued.

**ACCORDINGLY,** Petitioner's petition for a writ of habeas corpus (Dkt. 1) is DENIED, and he is denied a certificate of appealability.

**IT IS SO ORDERED** this 3rd day of March 2017.

Ronald A. White
United States District Judge
Eastern District of Oklahoma